### Carol E. MILLER

#### v.

### Joel S. BIRDWELL, M.D., et al.

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 25, 2010 Session.

June 23, 2010.

Application for Permission to Appeal Denied by Supreme Court Oct. 12, 2010.

11. This would include, if possible, Mother's sons, the half-siblings of the parties' daughter.

**54** 

---

Laura Beth Rufolo and Stacy Lynn Archer, Chattanooga, Tennessee, for the appellants, Joel S. Birdwell, M.D., and Medical Imaging Consultants, P.C.

Stephen W. Elliott and Fetlework Balite–Panelo, Nashville, Tennessee, for the appellants, Neil E. Christopher, Jr., M.D., individually and d/b/a Emergency Medicine and George P. Knox, III, M.D.

Hugh P. Garner, Chattanooga, Tennessee, for the appellee, Mark Miller.

## OPINION

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

This appeal involves claims for medical malpractice against three doctors. The doctors each filed a motion for summary judgment. The trial court denied all three motions. After reviewing the record, we find that there are no material issues of fact in dispute. The defendant-doctors affirmatively negated an essential element of the Plaintiff's claim—causation. Plaintiff failed to come forward with expert proof to demonstrate that there was a material issue of fact in dispute. Accordingly, the doctors are entitled to summary judgment. Consequently, this Court finds that the trial court erred in denying the motions for summary judgment. Reversed and remanded.

Appellee, Carol E. Miller suffered from a myriad of health problems including diabetes and renal failure. On August 19, 2002, Ms. Miller "turned her left ankle" while going down the stairs at her home. That day, she went to the emergency room and her ankle was "swollen and discolored." At the emergency room, she was seen by Appellant, Dr. Neil Christopher. Dr. Christopher ordered x-rays of Ms. Miller's ankle, and after reviewing the x-rays he determined that Ms. Miller's ankle was not broken, and diagnosed her with an ankle sprain. Appellant, Dr. Joel Birdwell, a radiologist, also reviewed the x-rays which were taken on August 19, 2002. It is disputed whether the x-rays were reviewed before Ms. Miller was discharged that same day from the hospital. Dr. Birdwell did not interpret the x-rays to show a fracture.

Although not addressed in her brief, it appears from the record, that Ms. Miller was hospitalized from August 23 to August 27, 2002 with an unrelated illness. On August 27, 2002, while hospitalized, Ms. Miller's ankle was again x-rayed. At that point, a radiologist identified a possible calcaneal fracture. Ms. Miller's treating physician then referred Ms. Miller to Dr. Mittur Ramprasad, an orthopaedic physician.

Ms. Miller returned to the emergency room on August 31, 2002 still complaining about her ankle. On that day, Ms. Miller was seen by Appellant, Dr. George P. Knox. Dr. Knox reviewed the report of the August 19, 2002 x-ray and determined that Ms. Miller's foot was infected. Dr. Knox asserts that he was not aware of the August 27th x-ray when he treated Ms. Miller and that the x-ray would not have been available in her chart at that time.

Ms. Miller was treated by Dr. Mittur N. Ramprasad, an orthopaedic physician,

from September 6, 2002 through September 24, 2002 for her fracture. He applied a short leg cast and later a soft dressing and advised her to use crutches or a walker and "tiptoe, non-weight bearing."

Ms. Miller was later seen by Dr. James Extine, an orthopaedic surgeon in November 2002. Dr. Extine treated Ms. Miller for her fracture for several months. Eventually, Ms. Miller's foot had to be amputated.[1]

On August 5, 2003, Ms. Miller filed a complaint alleging medical malpractice against Appellants, Joel S. Birdwell, M.D., Medical Imaging Consultants, P.C., Neil E. Christopher, Jr., M.D., individually and d/b/a Emergency Medicine, and George P. Knox, III, M.D. (collectively the "Appellants").[2] Ms. Miller[3] alleged that the Appellants deviated from the standard of care in failing to diagnose her fractured calcaneal and failing to provide her the proper care and treatment.

Dr. Birdwell and Medical Imaging Consultants, P.C. (collectively "Dr. Birdwell"), Dr. Christopher, and Dr. Knox each filed an answer denying any negligence and denying that any injuries, damages or losses incurred by Ms. Miller were caused by anything they did or did not do. Also, each of the Appellants raised the affirmative defense of comparative fault.

On July 5, 2005 Dr. Christopher and Dr. Knox both filed separate motions for summary judgment, along with a supporting memoranda of law, statements of undisputed facts and their own affidavits. In their respective motions, both Dr. Christopher and Dr. Knox argued that they had fully complied with the standard of care and that Ms. Miller had not presented an expert to testify otherwise. Both doctors provided affidavits which detailed their qualifications and the care provided to Ms. Miller. In the affidavits, both also assert that he did not deviate from the standard of care nor did any deviation from the standard of care on his part cause any harm or injury to Ms. Miller. As stated in the motions, Dr. Christopher's and Dr. Knox's motions only addressed the issues of whether each complied with the standard of care and whether anything they did or did not do caused Ms. Miller's injuries.

On August 1, 2005, Ms. Miller filed a "Statement of Undisputed Facts to George P. Knox, III, M.D." and a "Statement of Undisputed Facts to Neil E. Christopher, M.D." Both statements assert that the doctor to which the statement is directed misread an x-ray and failed to detect the fracture. Ms. Miller also asserted in these statements that misreading the x-ray was a deviation from the standard of care. Neither of Ms. Miller's statements address the issue of causation.

Also, on August 1, 2005, Ms. Miller filed a response to Dr. Knox and Dr. Christo-

---

1. It is unclear when Ms. Miller's foot was amputated. From the record, it appears that it may have been up to four years later.

2. Ms. Miller also named other parties as defendants in her lawsuit. However, these claims are not subject to this appeal. Ms. Miller's former husband, Don Miller, also joined in with her complaint alleging loss of consortium. However, all of his claims against all of the defendants were dismissed by the trial court on January 18, 2005 after Dr. Birdwell filed a motion for summary judg-

ment as to Don Miller's claims. Don Miller's claims are not subject to this appeal.

3. During the pendency of this appeal, Ms. Miller passed away and a suggestion of death was filed. On May 19, 2009, this Court entered an order substituting Mark Miller, personal representative of the Estate of Carol Elaine Miller in the place of Carole Elaine Miller. For purposes of clarity we will continue to refer to Ms. Miller as the Appellee instead of her personal representative.

pher's motion for summary judgment. To support her position, Ms. Miller also filed a response to the doctor's statement of undisputed facts and portions of the depositions of Dr. Christopher and Dr. Birdwell. In her response to the doctors statement of undisputed facts, Ms. Miller denied that they complied with the standard of care and disputed the assertion that nothing the doctors did caused her injuries. Ms. Miller did not provide any citations to the record to support her disputed facts.[4] In her memorandum of law, Ms. Miller argued that if an emergency room physician misread an x-ray and failed to detect a fracture, it would be a violation of the standard of care. To support this assertion, Ms. Miller cited to Dr. Christopher's deposition testimony.

On February 22, 2007, Dr. Christopher and Dr. Knox filed a renewed motion for summary judgment. There is nothing in the record to indicate that the previous motion for summary judgment was adjudicated. However, at oral arguments, counsel conceded that the trial court had denied summary judgment prior to the renewed motion. In support of the renewed motion, Dr. Christopher and Dr. Knox relied on their new statement of undisputed facts, each of their previously filed affidavits and the deposition of Dr. James Extine. As in their previous motion, this motion only addressed the issues of whether the two doctors complied with the standard of care and whether anything they did or did not do caused Ms. Miller's injuries. The motion was similar to the previously filed motions; the only

difference being the renewed motion cited to Dr. Extine's deposition testimony in which Dr. Extine testified that he would not expect an emergency room physician to diagnose Ms. Miller's fracture from the August 19th x-ray, and that in his opinion the emergency room doctors provided the appropriate care.

Ms. Miller filed a response to Dr. Christopher and Dr. Knox's renewed motion for summary judgment on April 30, 2007. In her memorandum of law, Ms. Miller argued that the motions were previously heard and ruled on by the trial court. As stated before, there is nothing in the record to support this assertion. Ms. Miller again relies on Dr. Christopher's testimony that it would be a deviation from the standard of care if an emergency room physician misread an x-ray, to support her opposition to the motion for summary judgment.

On March 5, 2005, Dr. Birdwell filed a motion for summary judgment. In support of his motion he also filed a statement of undisputed facts, portions of the depositions of Dr. Extine and Dr. Ramprasad, the affidavit of Dr. Ramprasad, and some of Ms. Miller's medical records. Dr. Birdwell relied only on the argument that any breach of the standard of care on his part was not a proximate cause of Ms. Miller's injuries. Dr. Birdwell asserted that based on Dr. Extine's testimony, Ms. Miller received appropriate care in the emergency room. Dr. Birdwell asserted that Dr. Extine had testified that Ms. Miller would have received the same care even if the fracture had been diagnosed. Dr. Bird-

---

4. We note that Tenn. R. Civ. P. 56.03 provides in pertinent part:

Any party opposing the motion for summary judgment must, not later than five days before the hearing, serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisput-

ed for the purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. Such response shall be filed with the papers in opposition to the motion for summary judgment.

well also asserted that Ms. Miller's injury was timely diagnosed and treated based upon Dr. Extine's and Dr. Ramprasad's testimony.

Also, on April 30, 2007, Ms. Miller filed a response to Dr. Birdwell's motion for summary judgment. Other than a statement that Dr. Birdwell read the x-ray films as being negative for a fracture, Ms. Miller's response does not address any deviation on the part of Dr. Birdwell. In support of this response, Ms. Miller attached her affidavit which asserted that she was treated for a sprained ankle instead of a fracture, and pictures of her foot. That same day, Ms. Miller also filed a "Statement of Undisputed Facts to Joel S. Birdwell, M.D." wherein she asserted that Dr. Birdwell failed to detect the fracture and this failure was a violation of the standard of care. This statement does not address causation.

Dr. Birdwell filed a response to Ms. Miller's statement of undisputed facts on May 3, 2007. In his response, Dr. Birdwell disputes her assertion that the failure to detect the fracture on August 19th was a deviation from the standard of care, and that the proper time frame for surgically treating the fracture was one to two weeks after the swelling had gone down.

According to the record, the trial court, Judge John W. Rollins, heard argument on all of the motions for summary judgment on May 3, 2007. A transcript of this hearing appears in the record. According to the transcript the trial court denied the motions for summary judgment stating, "Well, to be candid with you, I've got some concerns about the issue of causation. But I'm still going to give the Plaintiff a day in court, and we'll look at it again maybe at trial." The trial court then granted the Appellants' oral request for an interlocutory appeal. Unfortunately, Judge Rollins passed away before an order could be entered reflecting these decisions.

Ms. Miller filed her expert disclosures on August 17, 2007, disclosing Dr. Richelle Day and Dr. Brandon Downs as experts. According to the disclosure, Dr. Day would testify about the care and treatment Ms. Miller received from her from February 2003 through December 2006. Dr. Downs would testify about the surgical removal of Ms. Miller's foot.

Dr. Birdwell filed a motion to ascertain the status or in the alternative to enter an order regarding his motion for summary judgment on May 27, 2009. The motion asserted that Judge Rollins had denied the motion, but had granted an interlocutory appeal. The motion asserted that proposed orders had been filed but that Judge Rollins had not signed an order. On August 9, 2007, Dr. Knox and Dr. Christopher also filed a motion to ascertain the status or in the alternative to enter the previously filed proposed order.

On July 6, 2009, Ms. Miller filed a motion to amend her complaint.

On July 24, 2009, Ms. Miller filed a response to the Appellants' motion to ascertain status. In this response, Ms. Miller again argues her opposition to the motions for summary judgment and requests that the court consider the affidavit of Dr. Bennet Greenspan. The affidavit of Dr. Greenspan was also filed on July 24, 2009, along with Ms. Miller's expert disclosure. The disclosure states that Dr. Greenspan will testify that the fracture was "readily identifiable" from the x-rays read by Dr. Birdwell and that Dr. Birdwell deviated from the standard of care. Neither the disclosure nor Dr. Greenspan's affidavit addresses causation. Ms. Miller also asserted in her response that she had requested to amend her complaint to add an allegation that Dr. Knox and Dr. Christopher deviated from the standard of care by not applying a Jones dressing and a poste-

rior splint and in not referring her to an orthopedic doctor.

Dr. Birdwell filed a reply on July 28, 2009. In this reply, Dr. Birdwell asserts that it would be inappropriate for the trial court to consider Dr. Greenspan's affidavit as it was not before the court during the original hearing. Dr. Birdwell also asserts that Ms. Miller is attempting to supplement her previous opposition to the motion for summary judgment.

On August 3, 2009, the trial court, Judge William C. Lee,[5] heard the Appellants' motions to ascertain status. A transcript of this hearing appears in the record. On order was entered on August 17, 2009 reflecting the trial court's decision. As stated in the order:

> It further appears that the Court on May 3, 2007 made an Order (hereinafter "the Order") which DENIED the Motions for Summary Judgment by [the Appellants]. It further appears that immediately after the Court DENIED the Motions, [the Appellants] made oral motions to appeal the Order by permission under T.R.A.P. 9. It is clear from this Court's review of the transcript from the May 3, 2007 hearing that the previous Court (the late Judge John W. Rollins) GRANTED the oral motions for appeal by permission under T.R.A.P. of the subject Order.

By the August 3, 2009 order, the trial court granted the Appellants permission to seek appeal the denial of their motions for summary judgment under Tenn. R.App. P. 9.

On August 18, 2009, after the order denying summary judgment and granting interlocutory appeal was entered, the trial court entered an order granting Ms. Miller permission to amend her complaint. On August 26, 2009, Ms. Miller filed an amended complaint.

This Court entered an order granting the Appellants permission to appeal pursuant to Tenn. R.App. P. 9 on September 8, 2009.

On appeal, the Appellants raise one issue for our review: Whether the trial court erred in denying their motions for summary judgment.

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore de novo with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). "This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied." *Mathews Partners, LLC v. Lemme*, No. M2008–01036–COA–R3–CV, 2009 WL 3172134 at *3 (citing *Hunter v. Brown*, 955 S.W.2d 49, 50–51 (Tenn.1997)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8–9 (Tenn.2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." *Id.* at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue

5. Following Judge Rollins death, Judge William C. Lee took over the case.

of material fact exists." *Id.* at 5 (citing *Byrd v. Hall,* 847 S.W.2d 208, 215(Tenn.1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." *Martin v. Norfolk Southern Railway. Co.,* 271 S.W.3d 76, 84 (Tenn.2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Stovall v. Clarke,* 113 S.W.3d 715, 721 (Tenn.2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners,* 2009 WL 3172134 at *3 (citing *Byrd,* 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd,* 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." *Id.* "Summary Judgment

is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Landry v. South Cumberland Amoco, et al,* No. E2009–01354–COA–R3–CV, 2010 WL 845390 (Tenn.Ct.App. March 10, 2010) (citing *Carvell v. Bottoms,* 900 S.W.2d 23 (Tenn.1995)).

Tenn.Code Ann. § 29–26–115(a) sets forth the *prima facie* case for medical malpractice against a health care provider in Tennessee. The statute provides, in relevant part:

(a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

If the plaintiff cannot prove one of these three required elements, the plaintiff cannot establish a claim for medical malpractice. Tenn.Code. Ann. § 29–26–115 mandates that the above requirements be established by expert proof.[6]

---

6. Tenn.Code. Ann. § 29–26–115(b) provides:

No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the

person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The Court may waive this subsection (b) when it determines that the

Our Supreme Court has held that medical malpractice cases are particularly suited to summary judgment because expert testimony is, as a general rule, required in all such cases:

> In those malpractice actions wherein expert testimony is required to establish negligence and proximate cause, affidavits by medical doctors which clearly and completely refute plaintiff's contention afford a proper basis for dismissal of an action on summary judgment in the absence of proper responsive proof by affidavit or otherwise.

*Bowman v. Henard,* 547 S.W.2d 527, 531 (Tenn.1977). It is well established that the affidavits of the defendant physicians are sufficient by themselves to support a motion for summary judgment. *Kenyon v. Handal,* 122 S.W.3d 743 (Tenn.Ct.App. 2003). Once a defendant files an affidavit negating an essential element of the plaintiff's claim, it is incumbent upon the plaintiff to come forward with competent medical expert proof showing that there is a dispute of fact.

### Emergency Room Physicians

■ Both Dr. Christopher and Dr. Knox filed affidavits which stated that (1) they did not deviate from the standard of care and (2) that nothing they did or did not do caused Ms. Miller's injuries. Ms. Miller asserts on appeal that these affidavits are insufficient as they contain nothing more than conclusory assertions. We disagree. In their affidavits, Dr. Christopher and Dr. Knox both explain in detail their background and qualifications. Then, both Dr. Christopher and Dr. Knox explain the care and treatment provided to Ms. Miller. Dr. Christopher's affidavit provides:

> 3. Plaintiff presented to Harton Regional Medical Center on August 13, 2002 at approximately 12:11 p.m. secondary to left ankle pain after she had a slip and fall while at home when she missed a step. She was triaged upon presentation. Her history of allergies was noted. Her past and present medical history was noted. Her current medications were noted. Her vital signs, including blood pressure, respiration rate, pulse ox, temperature, pain scale and weight were noted. She was taken to an examination room at approximately 12:27 p.m.

> 4. Thereafter, I saw Plaintiff and evaluated her. I noted edema of her left ankle. I also noted that she had diabetes mellitus, high blood pressure and end-stage renal disease. I ordered an x-ray of Plaintiff's left ankle because she could not bear weight. This was a standard x-ray with three (3) different views. The x-ray films were brought directly to me for a "wet read" to interpret. I found she had some lateral soft tissue swelling of her left ankle with some osteoporosis but no fracture or dislocation. I diagnosed Plaintiff with a left ankle sprain, with secondary diagnoses of diabetes mellitus, hypertension and end-stage renal disease. Ice was applied to Plaintiff's left ankle. An air cast was applied to Plaintiff's left ankle. Plaintiff refused crutches because of shunts in her arms. I prescribed for her an analgesic, Darvocet N–100.

> 5. Plaintiff was discharged home in stable condition at approximately 1:44 p.m. with instructions to ice her ankle and elevate it for 24–48 hours, to follow up with an orthopaedic in three to seven days if not improving, as well as the prescription for Darvocet N–100. Plaintiff signed her name below the written instructions to indicate her understanding.

appropriate witnesses otherwise would not be available.

Dr. Christopher then asserted that the standard of care was to do exactly what he had done, that he did not deviate from the standard of care, and the no deviation on his part caused any injury or harm to Ms. Miller. Dr. Knox's affidavit provides:

3. Plaintiff presented to Harton Regional Medical Center on August 31, 2002 at approximately 1:56 p.m. secondary to left ankle pain and some dizziness. August 31, 2002 was a Saturday. She was triaged by Nurse Beth Reeves at approximately 1:59 p.m. Nurse Reeves took the following history from Plaintiff: She injured her left ankle two weeks [ago], was seen in the emergency room and x-rayed at that time but Plaintiff complained she was not getting any better. Pain medications were making her sugar "be all out of whack."

4. Thereafter, I saw Plaintiff and evaluated her. I noted her history of insulin dependent diabetes mellitus and renal failure. I noted that her left distal (mid-calf down) leg and foot were discolored (ecchymosis) with some redness, tenderness, and swelling. On examination, her leg appeared to be infected. She had been seen in the emergency room on August 19, 2002 by Dr. Neil Christopher at Harton for the initial injury. The x-rays from August 19 showed no evidence of fracture. I viewed the report of the August 19 x-ray. Plaintiff denied any further injury or exacerbation since August 19. There was also bruising to the toes and Plaintiff's foot felt tight to her. I suspected cellulitis at that point and requested a blood culture and a blood count. The blood culture was positive. Thereafter, when I received the results of the blood work, I consulted with Dr. Pearson, who was the nephrologist on call at that time, and explained Plaintiff's situation to him. It was standard when dealing with a patient on dialysis such as Plaintiff to contact the renal specialist on call to get specific instructions as to medication, dosing and other treatment. The blood culture confirmed my initial suspicion of cellulitis. Cellulitis is a potentially serious bacterial infection of the skin. It appears as a swollen, red area of skin that feels hot and tender, and it may spread rapidly. Cellulitis may also affect the tissues underlying the skin and can spread to the lymph nodes and blood stream. Left untreated, the spreading bacterial infection may rapidly turn into a life-threatening condition. I was aware of this potential seriousness when I saw Plaintiff on August 31. I also took into account Plaintiff's diabetic condition, which made her more prone for infection and made the cellulitis a potentially limb threatening condition. After consulting with Dr. Pearson, I received instruction from him to order a dose of the antibiotic Vancomycin to treat the cellulitis via IV. After she was administered the Vancomycin, Plaintiff began to complain of itching. She was given Benadryl 50 mg and the itching resolved. She was also provided a non-weight bearing posterior splint, which was applied to her left foot.

5. Plaintiff was discharged for home in stable condition at approximately 5:30 p.m. on August 31 with instructions to follow up with her private physician if worse and a prescription for Darvocet N–100. Plaintiff signed her name to the written instructions sheet, acknowledging that she had received and understood the instructions and prescriptions. As far as follow-up care, I knew that Plaintiff was going to be treated on the following Monday, September 2, by her renal care specialist, Dr. Omitowojo for her regular dialysis treatment. Her pain was improved upon discharge.

Dr. Knox also asserted that he did not know about Ms. Miller's August 27th x-ray and that it would have taken at least ten days for the x-ray to appear in her charts. Dr. Knox then stated that the standard of care required him to do exactly what he did, that he complied with the standard of care, and that no deviation from the standard of care on his part caused any harm or injury to Ms. Miller. Neither Dr. Knox nor Dr. Christopher merely provided "conclusory statements" of compliance with the standard of care as asserted by Ms. Miller. Both explained in sufficient detail the standard of care and what they did to comply with it. Accordingly, we find that their affidavits were sufficient.

By providing sufficient affidavits, both Dr. Christopher and Dr. Knox affirmatively negated essential elements of Ms. Miller's claim—deviation from the standard of care and causation—and effectively shifted the burden to Ms. Miller to demonstrate that a genuine issue of material fact exists. At this point it was incumbent upon Ms. Miller to come forward with competent medical expert proof showing that there was indeed, a dispute of material fact. After reviewing the record, this Court finds that Ms. Miller did not meet this burden.

In response to Dr. Christopher's and Dr. Knox's motions for summary judgment, Ms. Miller cited to both Dr. Christopher's and Dr. Extine's deposition testimony. She argues that this testimony demonstrates a question of fact as to whether Dr. Christopher and Dr. Knox deviated from the standard of care. Assuming *arguendo* that these depositions create a question of fact as to whether the doctors deviated from the standard of care, Ms. Miller did not provide the trial court with any expert medical proof to rebut Dr. Christopher's and Dr. Knox's assertion that any deviation from the standard of care on their

part, did not cause any harm or injury to Ms. Miller. Dr. Christopher and Dr. Knox both asserted that nothing they did or did not do caused harm or damage to Ms. Miller. This Court has thoroughly reviewed Dr. Extine's deposition testimony and can find no indication whatsoever that he believes that anything Dr. Christopher or Dr. Knox did or did not do caused any harm to Ms. Miller. Dr. Extine testified that he would not expect the emergency room doctors to diagnose the fracture, but instead to splint the ankle and make a referral to an orthopaedic. In Dr. Extine's opinion the emergency room doctors did exactly what they were supposed to do. The only opinion expressed by Dr. Extine as to causation of Ms. Miller's injuries was that if she had not walked on her foot as she had been instructed, the joint may not have collapsed. Dr. Extine testified that he also had instructed Ms. Miller not to walk on her foot. Further, Dr. Knox testified that he too instructed Ms. Miller "to stay off the foot." Also, Dr. Christopher testified that Ms. Miller refused crutches, indicating that he too told her not to place weight on the foot. Causation is an essential element to Ms. Miller's medical malpractice claim. Tenn.Code Ann. § 29–26–115(a). By not providing any expert medical proof, as required, from which the trial court could draw a reasonable inference that Dr. Christopher's and/or Dr. Knox's deviation from the standard of care caused harm or damage to her, Ms. Miller failed to demonstrate that there was a question of fact as to an essential element of her claim. Consequently, the trial court erred in not granting Dr. Knox and Dr. Christopher's motions for summary judgment.

### Radiologist

■ Next, we will address Dr. Birdwell's motion for summary judgment. As stated in his brief, Dr. Birdwell relied solely upon the causation element of Ms. Mil-

ler's claim in making his motion for summary judgment. Dr. Birdwell relied on the depositions of Dr. Extine and Dr. Ramprasad. Specifically, Dr. Birdwell argued despite any deviation from the standard of care on his part, Ms. Miller was properly and timely treated for her fracture and therefore his deviation, if any, was not a cause of her injury. Dr. Birdwell asserts that Dr. Extine testified that Ms. Miller received the appropriate care in the emergency room and that therefore his failure to diagnose did not cause her to miss any treatment in the emergency room. Further Dr. Birdwell asserts that based upon the testimony of Dr. Extine and Dr. Ramprasad, Ms. Miller's fracture was timely diagnosed and treated.

After reviewing the record, we find that Dr. Birdwell's motion for summary judgment was properly supported. Dr. Birdwell effectively negated an essential element of Ms. Miller's claim—causation—and shifted the burden to her to demonstrate a material issue of fact in dispute. Dr. Birdwell only reviewed Ms. Miller's August 19th x-ray. It is disputed whether he deviated from the standard of care when doing so. However, as pointed to by Dr. Birdwell, Dr. Extine testified that when he diagnoses a fracture, whether it be in his office or the emergency room, he treats the patient by applying a "Jones Dressing"—a soft wrap to control the swelling—and a posterior splint to stabilize it. Dr. Extine testified that the emergency room doctors did just what he would have expected them to do—splint the ankle and refer the patient to an orthopaedic doctor. This is exactly what Dr. Christopher, the emergency room doctor that saw Ms. Miller on August 19, 2002, did to treat her. Even if we assume Dr. Birdwell devi-

ated from the standard of care, Ms. Miller received the appropriate care and treatment on August 19, 2002. Therefore, Dr. Birdwell's alleged deviation cannot be a cause of any harm or damage to Ms. Miller. Consequently, Dr. Birdwell demonstrated that any deviation from the standard of care on his part did not cause any harm or injury to Ms. Miller as she received the expected and proper care from Dr. Christopher even if the fracture had been diagnosed.

At this point it was incumbent on Ms. Miller to come forward with expert proof to demonstrate a material issue of fact in dispute as to the issue of causation. Ms. Miller could have done this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." *Martin v. Norfolk Southern Railway. Co.*, 271 S.W.3d 76, 84 (Tenn.2008) (citations omitted). As with the emergency room doctors, Ms. Miller chose not to produce additional expert medical evidence to refute Dr. Extine's testimony.[7] Further, Ms. Miller did not point to any evidence overlooked by Dr. Birdwell to establish an issue of fact as to causation. Ms. Miller did file expert disclosures after Judge Rollins orally ruled on the motions for summary judgment and before the order was entered. However, these disclosures in no way indicate that any of her experts have an opinion on causa-

---

7. Ms. Miller did eventually file an affidavit of Dr. Greenspan which stated that Dr. Birdwell deviated from the standard of care. We do not need to address whether this affidavit was timely filed and therefore should be considered because the affidavit does not address causation and therefore would not affect the opinion of this Court.

tion.[8] Accordingly, this Court finds that the trial court erred in denying Dr. Birdwell's motion for summary judgment.

### Conclusion

Based on the foregoing reasons, the decision of the trial court denying the Appellants' motions for summary judgment is reversed. All three doctors affirmatively negated an essential element of Ms. Miller's claim—causation. Ms. Miller failed to demonstrate that there was a material issue of fact in dispute. Costs of this appeal are taxed against the Appellee, Mark Miller, personal representative of the Estate of Carol Elaine Miller, for which execution may issue if necessary.

**8.** We need not make a determination as to whether these disclosures should or should not have been considered by Judge Lee prior to entry of the order denying the motions for summary judgment. We note the Appellants' argument that they should not be considered as they were submitted after Judge Rollins orally ruled on the motions. We consider them for purposes of argument only.