IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 6, 2009 Session

## JOSEPH C. BARNA v. W. MARTIN SEILER

**Appeal from the Circuit Court for Davidson County**
**No. 06C-996      Walter C. Kurtz, Judge**

**No. M2008-01573-COA-R3-CV - Filed April 19, 2011**

An investor who lost money on stock transactions filed a claim against his stockbroker that was dismissed in arbitration. The investor then filed a complaint for legal malpractice against the attorney who had represented him in the arbitration proceeding. The attorney filed a motion for summary judgment accompanied by his expert affidavit, declaring that in his representation of the investor he had complied with all applicable standards of legal professional practice. The investor did not respond with an expert testimony contradicting the defendant. Following a series of delays, the trial court granted summary judgment to the defendant attorney after declining to grant another continuance. The former client filed a motion for relief from judgment, and the trial court denied the motion. After the attorney voluntarily dismissed his counterclaim, the judgment became final, and the investor appealed. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which RICHARD H. DINKINS, J., joined. FRANK G. CLEMENT, JR. filed a dissenting opinion.

Phillip Leon Davidson, Nashville, Tennessee, for the appellant, Joseph C. Barna.

Byron K. Lindberg, Karl M. Braun, Nashville, Tennessee, for the appellee, W. Martin Seiler.

## OPINION

### I. AN ARBITRATION PROCEEDING AND A MALPRACTICE COMPLAINT

According to the allegations of his complaint, Mr. Joseph Barna ("Mr. Barna") suffered extensive losses in his IRA and brokerage accounts during the years 2000 and 2001.

He claimed that those losses were attributable to negligent handling of margin calls and IRA rollovers on the part of his broker, T. D. Waterhouse Services, Inc. In 2003, Mr. Barna filed a claim with the National Association of Securities Dealers, seeking recovery of his losses from Waterhouse. His claim was submitted to arbitration.

Prior to the arbitration hearing, Mr. Barna's attorney withdrew from representation because he was unable to procure a necessary expert witness. Mr. Barna then retained the defendant, Mr. Martin Seiler ("Mr. Seiler") to replace him. Mr. Seiler drafted a letter of engagement outlining the terms for his representation of Mr. Barna, which the client signed. Among other things, the letter cautioned Mr. Barna that Mr. Seiler could not guarantee him a favorable outcome in the arbitration proceeding. Mr. Seiler represented Mr. Barna at the arbitration hearing, which was conducted on April 18 or 19, 2005. The arbitration panel dismissed Mr. Barna's claim and awarded him no damages.

On April 21, 2006, Mr. Barna filed a complaint for legal malpractice against Mr. Seiler in the Davidson County Circuit Court. Mr. Barna claimed that Mr. Seiler had failed to represent him "in a reasonable, prudent and/or capable manner, and that the financial losses he suffered as a result of that failure entitled him to damages in an amount not less than $200,000."[1] Mr. Seiler filed an answer to the complaint and a counterclaim for fraudulent misrepresentation on June 14, 2006.

In his counterclaim, Mr. Seiler alleged that Mr. Barna had negligently or intentionally failed to inform him that he had previously filed claims against Charles Schwab & Company in 1989 for financial losses likewise related to his use of margin calls, that the claims had gone to arbitration, and that the arbitration board had found Schwab & Company not liable and dismissed all claims.

On November 17, 2006, Mr. Seiler filed a motion for summary judgment accompanied by his expert affidavit. He described his professional history and qualifications and his dealings with Mr. Barna. Mr. Seiler then swore that in his representation of Mr. Barna, he had complied with the applicable standard of legal professional practice, that he did not breach any legal duty owed to his client during the course of his representation, and that to "a reasonable degree of legal certainty," nothing he did with respect to the legal services he provided to Mr. Barna proximately caused his client's losses when the arbitration panel

---

[1]This was not the only time that Mr. Barna filed a legal malpractice claim against an attorney who represented him in an arbitration proceeding before the National Association of Securities Dealers. *See Barna v. Preston Law Group,* No. M2008-02560-COA-R3-CV, 2009 WL 2616038 (Tenn. Ct. App. Aug. 25, 2009) (no Tenn. R. App. P. 11 application filed).

awarded him no damages.

The summary judgment motion was scheduled to be heard on January 12, 2007. The motion was not heard on that date, and the judge assigned to the case subsequently recused himself. Mr. Barna's attorney had quit his law practice and withdrawn as his counsel, and Mr. Barna retained a new attorney. The new attorney attested to the court that he would be able to defend the pending motion within thirty days, and he asked for a continuance. Because the case had to be reassigned, the recusal essentially functioned as an indefinite continuance.

On February 26, 2007, Mr. Barna's new attorney filed another motion to continue and an affidavit in which he stated that he had had the case for less than 90 days and had not yet received the complete file from his client or from the previous counsel. He also stated that he had been diligently seeking to locate an attorney to provide an expert affidavit to counter Mr. Seiler's affidavit, and that "[a]s of February 25, 2007, I am in contact with an attorney who has agreed to participate for purposes of testifying as an expert witness in this matter, but who cannot attend to the matter for several days." Mr. Barna also filed his own affidavit, in which he denied some of the factual allegations in Mr. Seiler's affidavit.

A hearing on the summary judgment motion was scheduled for March 2, 2007, but was not conducted until March 23, 2007. At the hearing, Mr. Barna again asked for a continuance because he had not yet managed to obtain the testimony of an expert. The trial court did not specifically rule on the motion for continuance, but entered an order on April 2, 2007, granting summary judgment to Mr. Seiler and dismissing Mr. Barna's case with prejudice.

Mr. Barna subsequently retained yet another attorney, who filed a motion on July 25, 2007, requesting relief from the court's judgment pursuant to Tenn. R. Civ. P. 60.02(5). The attorney argued that Mr. Barna's previous attorney had found an expert but was unable to obtain an opinion from him in time to oppose the summary judgment motion, that this created "a case of extreme hardship," and thus that the trial court should have given him additional time to respond.

After hearing argument by counsel and reviewing the record, the trial court decided that it had to treat Mr. Barna's motion under Tenn. R. Civ. P. 54.02 rather than as a Rule 60.02 motion for relief from a final judgment.[2] Mr. Barna did not submit an expert affidavit to the court with his motion, even though four additional months had passed since summary

---

[2]The judge who rendered the summary judgment subsequently recused herself from further proceedings. Thus, the judge who ruled on Mr. Barna's Rule 60.02(5) motion was the third judge to participate in this case.

judgment was entered. The trial court found that Mr. Barna had not satisfied the burden for relief from the summary judgment under either Rule 54 or Rule 60. Mr. Seiler subsequently dismissed his counter-claim without prejudice, thereby rendering the trial court's decision final and setting the stage for this appeal.

## II. LEGAL MALPRACTICE

"In order to prove legal malpractice, a plaintiff must establish that (1) the defendant attorney owed a duty to plaintiff; (2) the attorney breached that duty; (3) the plaintiff suffered damages; and (4) the breach proximately caused the plaintiff's damage." *Tenn-Fla Partners v. Shelton,* 233 S.W.3d 825, 830 (Tenn. Ct. App. 2007) (citing *Horton v. Hughes*, 971 S.W.2d 957, 959 (Tenn. Ct. App. 1998)); *Blocker v. Dearborn & Ewing*, 851 S.W.2d 825, 827 (Tenn. Ct. App. 1992).

In a legal malpractice case, the defendant attorney's duty is to serve the client with "that degree of care, skill, and diligence which is commonly possessed and exercised by attorneys practicing in the same jurisdiction." *Sanjines v. Ortwein and Assoc., P.C.*, 984 S.W.2d 907, 910 (Tenn. 1998). Thus, the elements of duty and of breach of duty in a legal malpractice case are measured by the applicable standard of professional practice. *Cleckner v. Dale*, 719 S.W.2d 535, 540 (Tenn. Ct. App. 1986).

If that standard is beyond the knowledge of an ordinary layperson, then the testimony of an expert witness is required to prove the applicable standard of practice and that the defendant's conduct fell below that standard. *Bursack v. Wilson*, 982 S.W.2d 341, 343 (Tenn. Ct. App. 1998); *Cleckner v. Dale,* 719 S.W.2d at 540. In a legal malpractice case, an attorney is entitled to render an expert opinion on his own behalf. *Hunter v. Cohen,* 55 S.W.3d 571, 574 (Tenn. Ct. App. 2001) (citing *Cleckner v. Dale,* 719 S.W.2d 535 (Tenn. Ct. App. 1986)

Mr. Barna's allegations in this case relate to securities arbitration proceedings. He has alleged, among other things, that Mr. Seiler failed to recognize which securities are marginable and which are not, failed to recognize the difference between a house call and an exchange call, and failed to show the arbitrators that Waterhouse had not followed NY Stock Exchange rules and its own rules in connection with the "Grossover extension of credit." The standard of professional legal practice in such matters is clearly beyond the knowledge of ordinary laymen. Consequently, the elements of duty, breach of duty, and causation were required to be shown by expert testimony.

### III. SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004); *Pero's Steak & Spaghetti House v. Lee,* 90 S.W.3d 614, 620 (Tenn. 2002); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. West Town Mall,* 130 S.W.3d at 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Id.* Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.,* 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d at 763.

To be entitled to summary judgment, a defendant moving party must either (1) affirmatively negate an essential element of the non-moving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 9 (Tenn. 2008). If the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of a genuine issue of material fact. *Martin,* 271 S.W.3d at 84; *Hannan*, 270 S.W.3d at 5; *Staples v. CBL & Associates*, 15 S.W.3d 83, 86 (Tenn. 2000) (citing *Byrd v. Hall*, 847 S.W.2d at 215).

In the case before us, Mr. Seiler testified as to his qualifications, his experience in this area of law, his knowledge of the applicable standard of care, and some facts regarding his representation of Mr. Barna, setting out an account of the arbitration proceedings. He then stated:

> All legal services I provided to Mr. Barna were given in accordance with the standard of acceptable legal professional practice and with the degree of skill, care, diligence, learning, and experience ordinarily used, possessed, and practiced by other attorneys skilled in securities law and in arbitration related to securities law and in arbitration related to securities law in the State of Tennessee on or about the times material herein.

Mr. Seiler further stated that in his opinion, nothing he did or did not do with respect to the legal services he provided to Mr. Barna caused the losses his client suffered in the

arbitration proceeding.

In response, Mr. Barna did not file an expert affidavit opining that Mr. Seiler had breached the duty of care. Instead, he presented his own affidavit, containing his own opinions as to alleged deficiencies in Mr. Seiler's performance before the arbitration panel. Mr. Barna is not an attorney, and thus is not considered competent to testify about the standard of care applicable to those in the legal profession. In order to given an opinion on the standard of care applicable to a profession, one must be familiar with it. *Chapman v. Bearfield*, 207 S.W.3d 736, 739-40 (Tenn. 2006). Mr. Barna's conclusions as to the standard of care and any alleged breach thereof in Mr. Seiler's representation are, therefore, inadmissible. *Horton v. Hughes*, 971 S.W.2d 957, 960 (Tenn. Ct. App. 1998) (citing *City Savings Bank v. Kensington Land Co.*, 37 S.W. 1037, 1039 (Tenn. Ch. App. 1896)).

Because Mr. Barna did not furnish expert testimony to contradict Mr. Seiler's testimony, Mr. Barna failed to present competent evidence to create a genuine issue of material fact. However, Mr. Barna would have had that burden only if Mr. Seiler's affidavit was sufficient to shift the burden of presenting conflicting expert evidence to Mr. Barna. If it was, summary judgment was properly granted. *See Bowman v. Henard,* 547 S.W.2d 527, 530 (Tenn. 1977) (summary judgment is proper in a professional malpractice case if the only issue is one which requires expert testimony and there is no expert response to an affidavit by an expert).

## IV. SUFFICIENCY OF EXPERT AFFIDAVIT

It has long been the rule that affidavits of defendant professionals are sufficient to support a motion for summary judgment and to shift the burden to the plaintiff to come forward with competent expert proof showing there is a dispute. *Miller v. Birdwell*, 327 S.W.3d 53, 60 (Tenn. Ct. App. 2010) ("It is well established that the affidavits of the defendant physicians are sufficient by themselves to support a motion for summary judgment.") (citing *Kenyon v. Handal*, 122 S.W.3d 743 (Tenn. Ct. App. 2003)).

Mr. Seiler's expert affidavit addressed two essential elements of Mr. Barna's claim: that Mr. Seiler breached his duty to represent Mr. Barna with "that degree of care, skill, and diligence which is commonly possessed and exercised by attorneys practicing in the same jurisdiction," and that Mr. Barna's damages were caused by any breach of duty by Mr. Seiler. As a general rule, a defendant's affidavit stating that, in his or her professional opinion, nothing done by the professional violated the applicable standard of care or cause the alleged injury has been held sufficient to negate elements of negligence or malpractice in the plaintiff's case and require that plaintiff come forward with expert evidence creating a dispute that warrants a trial. *Hager v. Larson*, 2010 WL 532856 (Tenn. Ct. App. Feb. 16,

2010) (citing *Hessmer v. Miranda*, 138 S.W.3d 241, 244 (Tenn. Ct. App. 2003)) (citing *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 438 (Tenn. 1998)).

While affidavits by professionals which "clearly and completely" refute a plaintiff's claims "afford a proper basis for dismissal of an action on summary judgment in the absence of proper responsive proof by affidavit or otherwise," *Miller*, 327 S.W.3d at 60 (quoting *Bowman*, 547 S.W.2d at 531), there is authority holding that merely conclusory statements, whether from experts or otherwise, are not sufficient. Generally, "[c]onclusory assertions" in support of a defendant's motion for summary judgment are not sufficient to shift the burden to the plaintiff to come forward with evidence to create a material dispute of fact." *Giggers v. Memphis Housing Auth.*, 277 S.W.3d 359, 363 (Tenn 2009); *Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993).

The question before us is whether the affidavit from the defendant attorney, Mr. Seiler, was nonconclusory enough to shift the burden of responding with expert proof to the plaintiff, Mr. Barna. In examining this question, it must be remembered that with any expert, the primary evidence provided is the expert's opinion. Opinion, of course, is not really a fact, and is, by its nature, somewhat conclusory.

Additionally, an affidavit filed in a summary judgment proceeding must meet the requirements of Tenn. R. Civ. P. 56.06, which are that the affidavit must be based on the affiant's personal knowledge; that the affiant's statement must otherwise be admissible in evidence; and that the affiant is competent to testify regarding the substance of the affidavit. *Church v. Perales*, 39 S.W.3d 149, 166 (Tenn. Ct. App. 2000). An expert's affidavit must also show that the affiant is qualified to render an expert opinion and that the evidence of the expert will substantially assist the trier of fact should the matter go to trial. *Id.* Mr. Barna has not challenged Mr. Seiler's qualifications or personal knowledge, nor has he attacked the sufficiency of the affidavit.[3] We find no deficiency in Mr. Seiler's affidavit on the basis of these requirements either.

In his affidavit, Mr. Seiler testified that he has practiced law in Tennessee for twenty years, that his practice has involved ERISA cases, and that those cases have often involved securities and securities-related law. He also testified that "for the past four or five years my practice has involved securities related arbitration." He also set out an account of his representation of Mr. Barna and of the arbitration proceedings at issue. We conclude these statements demonstrate his testimony is based on personal knowledge, that he is competent to testify as to the matters in the affidavit, and that he is qualified to render an expert opinion

---

[3]The question of whether Mr. Seiler's affidavit was sufficient to shift the evidentiary burden to Mr. Barna was raised by the author of the dissent filed herein.

regarding the applicable standard of care and whether he breached that standard. Mr. Seiler opined that the legal services he provided Mr. Barna met the applicable standard of acceptable legal professional practice for securities law and arbitration related to securities law.[4]

It is also important to keep in mind that the question here is simply whether Mr. Seiler's affidavit was sufficient to shift the burden to Mr. Barna to come forward with countervailing expert evidence in order to escape summary judgment. A brief survey of recent opinions addressing the issue of shifting the summary judgment evidentiary burden with a defendant expert's affidavit that he or she did not breach the applicable standard of care indicates that Mr. Seiler's affidavit was sufficient to require response by expert affidavit from Mr. Barna.

We begin with a case in which the Tennessee Supreme Court held that a doctor defendant's affidavit was not sufficient to shift the evidentiary burden to the patient plaintiff as to one cause of action. *Blanchard v. Kellum*, 975 S.W.2d 522. However, the insufficiency in that case was not that the affidavit was conclusory. Instead, the Court found that the doctor did not shift the burden because it did not actually address the specific cause of action, medical battery. *Id.* at 525. After explaining the difference between lack of informed consent and medical battery as causes of actions, the Court stated, "The primary consideration in a medical battery case is simply whether the patent knew of and authorized a procedure. This determination does not required the testimony of an expert witness." *Id.* at 524. Next, the Court considered the summary judgment with regard to the patient's medical battery claim, stating:

> Dr. Kellum's affidavit contains a conclusory statement that she acted "in a recognized and approved form . . . and that such treatment would not and did not fail to meet the standard of care . . ." The affidavit is **non-responsive** to the plaintiff's allegation that Dr. Kellum failed to inform the plaintiff of her intention to perform a full extraction during the appointment . . . Moreover, Dr. Kellum's brief relies on a theory of implied consent. (emphasis added).
>
> . . .
>
> A theory of implied consent does not negate an essential element of the plaintiff's claim. The defendant must proffer admissible evidence establishing that the plaintiff authorized a full extraction to trigger the plaintiff's burden,

---

[4]Mr. Seiler further stated that in his opinion, nothing he did or did not do with respect to the legal services he provided to Mr. Barna caused the losses his client suffered in the arbitration proceeding, thus addressing the causation element of a malpractice claim.

. . . .

*Id*. at 525.

Similarly, in *Weaver v. Pardue*, 2010 WL 4272678 (Tenn. Ct. App. Oct. 28, 2010), this court found the defendant doctor's affidavit sufficient to shift the evidentiary burden with regard to a plaintiff's malpractice claim,[5] but insufficient with regard to the serious mental injury element of her claim for outrageous conduct arising from an alleged sexual assault. In distinguishing its holdings based on the different causes of action, the court explained:

> The controlling distinction, however, is that Doctor's self-serving affidavit was not conclusory with respect to the allegations of medical negligence; it detailed his alleged treatment of Patient, the facts serving as the basis of his conclusion, and his qualifications as a medical doctor. *See Cornett*, supra, at 341 (citation omitted) (recognizing that the simple fact that an expert's affidavit is self-serving does not make it conclusory). . . .
>
> This case presents an altogether different situation with respect to Doctor's assertion that his actions did not cause Patient a serious mental injury. Doctor has not alleged undisputed facts to show that he examined the patient with respect to the alleged mental injury, treated the patient for the alleged mental injury, maintained contact with the patient following the conduct allegedly causing the injury, or possessed the requisite knowledge and expertise to offer an opinion on whether his alleged conduct caused the alleged injury. Doctor's affidavit does not establish a factual basis upon which to establish the non-existence of Patient's serious mental injury or to determine its cause; his assertions are wholly conclusory.

*Weaver*, 2010 WL 4272678, at *8.

Obviously, then, an affidavit that does not address a requisite element of the plaintiff's cause(s) of action is not sufficient to shift the evidentiary burden, because it does not negate an essential element. In the case before us, Mr. Seiler's affidavit specifically addresses the

---

[5]Although technically the trial court's grant of summary judgment on the medical malpractice claims was not appealed, this court stated approved the trial court's determination that the doctor's affidavit was sufficient to warrant summary judgment on that claim by explaining why the affidavit was sufficient.

duty and breach of duty elements of Mr. Barna's malpractice claim.[6]  Additionally, an affidavit is considered "conclusory" if it does not indicate a factual basis for the opinion. Herein, Mr. Seiler established the factual basis, *i.e.*, his personal knowledge of his actions in his representation of Mr. Barna.

Defendant expert affidavits similar to that provided by Mr. Sieler, at least as the specificity of those affidavits is described in the opinions, have been found sufficient to shift the evidentiary burden and support the grant of summary judgment.

Recently, in *Miller v. Birdwell*, 327 S.W.3d 53, this court addressed a plaintiff's argument that the defendant doctors' affidavits contained nothing more than conclusory allegations and found the affidavits sufficient.  The opinion described the defendant doctors' affidavits as explaining in detail their **background and qualifications**, **explaining the care and treatment provided** to the patient, and each stating that "**that the standard of care was to do exactly what he had done, that he did not deviate from the standard of care, and the no deviation on his part caused any injury or harm to [the patient].**" *Miller*, 327 S.W.3d at 60-62 (emphasis added).

In another recent opinion, *Zulueta v. Lassiter*, 2010 WL 3852375 (Tenn. Ct. App. September 30, 2010), this court again looked at a defendant doctor's expert affidavit in support of summary judgment in a medical malpractice action.  We described the affidavit as stating

> that she is a **medical doctor who has practiced medicine in Tennessee since 1991, that she specializes in internal medicine and family care, and that she routinely performs physical Fitness for Duty Examinations** as an "essential and integral part" of her practice. It also states that **she is familiar with the recognized standards of acceptable professional practice of medicine and the performance of FFDEs in Davidson County, Tennessee, that the FFDE she performed on Plaintiff was performed in compliance with the accepted standard, and that she caused no harm to Plaintiff.**

*Zulueta*, 2010 WL 3852375, at *4 (emphasis added).   We held that the affidavit affirmatively negated two essential elements of Plaintiff's claims: (1) that she "acted with less than or failed to act with ordinary and reasonable care," and (2) that "as a proximate result of [her] negligent act or omission, the plaintiff suffered injuries which would not have otherwise occurred." *Id*.

---

[6]As stated earlier, the affidavit also addresses the causation element.

In *Hutter v. Cohen*, 55 S.W.3d 571 (Tenn. Ct. App. 2001), a legal malpractice case, this court held that the defendant attorneys' affidavits were sufficient to shift the burden to the plaintiff client to come forward with a disputing expert's affidavit because those affidavits, even though broadly worded, "establish that they measured up to the degree of special skill in representing this plaintiff so as to meet the standard for a professional in that community. *Hutter*, 55 S.W.3d at 574 (citing *Cleckner v. Dale*, 719 S.W.2d 535 (Tenn. App.1986)). Earlier in the opinion, the court had described the defendant expert affidavits in some greater detail, explaining that those affidavits essentially stated that the defendant was "**familiar with the facts of the case and with the facts surrounding the aforementioned representation**" and that each attorney stated it was his professional opinion,

> within a reasonable degree of professional certainty ... and based upon my personal knowledge and my review of the facts involved in the above captioned case, **I did not deviate from or fall below the legally accepted standard of practice for attorneys** practicing law in Blount County, Tennessee, and similar communities, nor did I fail to exercise that degree of care, skill, and diligence which is commonly possessed and exercised by attorneys in practice in this jurisdiction, relative to my aforementioned representation of Jack Hutter.

*Id*. at 573 (emphasis added).

*Glass v. Underwood*, 2005 WL 1669893 (Tenn. Ct. App. July 18, 2005), was also a legal malpractice case in which this court determined, after applying the shifting burden analysis later reaffirmed in *Hannan*, that the defendant attorney's affidavit was sufficient to shift the evidentiary burden. The court stated, "As a licensed attorney practicing in Knox County, Mr. Underwood is qualified as an expert to attest to the standard of care required of attorneys in his position and it is our determination that the above cited affidavit filed by Mr. Underwood stating that he '**complied with the standard of care for lawyers** in such litigation in the Knoxville, Knox County, Tennessee community' was sufficient to shift the burden to Mr. Glass." *Id.*, 2005 WL 1669893, at *4. (emphasis added.)

The court had described the affidavit in more detail, quoting from it as to the lawyer's professional training and that "by virtue of" that training and experience, he was familiar with the standard of care for lawyers involved in the relevant type of litigation. *Id*., 2005 WL 1669893, at *2. After briefly describing the matter in which he provided representation and certain post judgment actions, the attorney's affidavit further provided:

-11-

It is my opinion that in my preparation and trial of this case that I complied with the appropriate standard of care for lawyers in such litigation. . . .It is my opinion as a practicing attorney that there was no negligence on my part in the preparation and trial of this case.

*Glass*, 2005 WL 1669893, at *2 (emphasis added).

In *Doe v. Duncan*, 2008 WL 4367314 (Tenn. Ct. App. Sept. 18, 2008), this court affirmed the grant of summary judgment to defendant attorneys in a legal malpractice case. The first question was whether the attorneys' affidavits were sufficient to shift the burden to the client. Both attorneys stated they had years of complex trial experience and were "familiar with the standard of care for attorneys in cases such as [plaintiff's litigation]." They described some of the actions they had taken during the representation, and stated the "appropriate standard of care was exercised by us both in connection with preparation of the case for trial and in settlement negotiations leading to settlement of the case." *Duncan*, 2008 WL 4367314, at *1-2 (emphasis added).

Based upon our review of these opinions and their description of the particular affidavits involved, we find that Mr. Seiler's affidavit does not differ in any significant way from the affidavits found sufficient in these and similar cases, and it is no more conclusory. In order to "clearly and completely" refute a plaintiff's claims of professional malpractice, and thereby shift the evidentiary burden to the plaintiff in a summary judgment motion determination, a defendant expert's affidavit will be sufficient if it: (1) establishes the affiant's knowledge of the applicable standard of care; (2) demonstrates the basis for that knowledge; (3) describes, even briefly, the actions taken by the affiant in the course of the professional services rendered to plaintiff; (4) and states the opinion that the actions met the standard of care, or that nothing done by affiant breached the standard of care. It is not necessary that the affidavit address every allegation in the complaint; nor is it necessary that a lawyer defendant describe the basis for every decision made or action taken. It is sufficient that the defendant provide an expert opinion as to standard of care and breach thereof that meets the criteria for such evidence.[7]

---

[7]We are aware that there are factual disputes between Mr. Seiler's affidavit and Mr. Seiler's complaint and response. Mr. Barna refers to those disputes as a reason to reverse the grant of summary judgment. However, it is not necessary that those disputes be resolved in order to determine standard of care and breach by expert opinion. In other words, since Mr. Seiler testified as to what he did in representing Mr. Barna and that in his opinion he did not breach the applicable standard of care, it is not necessary to determine whether or not certain factual allegations by Mr. Barna are true unless or until he provides expert opinion that, if those allegations are true, Mr. Seiler breached the applicable standard of care.

-12-

Accordingly, we conclude that Mr. Seiler's affidavit was sufficiently specific to shift the burden to the plaintiff to come forward with countervailing expert evidence regarding the standard of care and its breach. Mr. Barna failed to provide such evidence.

## V. CONTINUANCE

While Mr. Barna cannot disagree with the fact that he did not provide expert testimony disputing Mr. Seiler's affidavit, he argues that the trial court should have given him more time to obtain the necessary expert evidence.

By dismissing Mr. Barna's claim on summary judgment, the trial court implicitly denied his motion for a continuance, which, if it had been granted, would have given him more time to obtain an expert affidavit. Review of a trial court's refusal to grant a continuance is conducted under the abuse of discretion standard. *Morrow v. Drumwright,* 304 S.W.2d, 313, 315 (Tenn. 1957); *Blake v. Plus Mark, Inc.,* 952 S.W.2d 413, 415 (Tenn. Ct. App. 1997); *Tipton v. Smith,* 593 S.W.2d 298, 301 (Tenn. Ct. App. 1979). A court will be found to have abused its discretion "only when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Eldridge v. Eldridge*, 42 S.W.2d 82, 85 (Tenn. 2001).

A prime factor for a trial court to consider in ruling on a motion for continuance is the age of the action. *Coakley v. Daniels*, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1982). Mr. Barna argues that it is not unusual for a case to go on for longer than a year before it reaches a dispositive phase, and thus that the trial court abused its discretion in denying a continuance only eleven months after his complaint was filed. However, continuances are not customarily granted merely as a matter of course, *State v. Melson*, 638 S.W.2d 342, 359 (Tenn. 1982). In this case, there was a series of delays that were functionally equivalent to continuances as Mr. Barna changed attorneys and as different judges recused themselves. The trial court was entitled to factor those delays into its determination on Mr. Barna's most recent motion for continuance.

Mr. Barna filed his complaint on April 21, 2006. Mr. Seiler filed his motion for summary judgment on November 27, 2006. The motion was scheduled to be heard on December 12, 2006, but was not heard at that time. On December 29, 2006, more than eight months after Mr. Barna filed his complaint, his new attorney announced that he would be prepared to defend the motion in thirty days and asked for a continuance.

The summary judgment motion hearing was set for March 2, 2007, over two months after Mr. Barna's attorney announced that he was prepared to defend the motion in thirty days. As it turned out, the motion was rescheduled for March 23, 2007, thus giving Mr. Barna an additional twenty-one days to respond to the summary judgment motion and supporting expert affidavit.

A party who is unprepared for a trial or other scheduled proceeding may be granted a continuance if he can demonstrate diligence in trying to prepare. See *Morrow v. Drumwright,* 304 S.W.2d at 315. "Whether a continuance should be granted is determined on the basis of the diligence or lack of same." *Barber & McMurry, Inc. v. Top-Flite Development Corp. Inc.*, 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986). *See also Lethco v. Huffman,* No. 03A01-9610-CV-00340, 1997 WL 280044 (Tenn. Ct. App. May 28, 1997) (continuance denied at summary judgment stage of medical malpractice case when plaintiff failed to produce promised expert affidavit).

As we noted above, Mr. Barna's attorney stated in December of 2007 that he would be ready to defend the summary judgment motion in thirty days, that he was diligently searching for an expert willing to testify, and that he had contacted such an expert, but that he needed a few more days to obtain the expert's affidavit. In subsequent proceedings, neither he nor Mr. Barna's successor attorney ever identified the purported expert, nor did they explain why the promised affidavit was not produced. Thus, despite his attorney's assertion of diligence, Mr. Barna produced no evidence to give the court confidence that a further delay would result in the production of the evidence he sought.

In light of the amount of time that elapsed between Mr. Seiler's motion for summary judgment and the hearing on the motion, the representations of Mr. Barna's attorney as to his near-readiness for the hearing, and the failure to offer any explanation during the summary judgment hearing as to the reason or reasons why the promised expert affidavit could not be produced, the trial court did not abuse its discretion in declining to grant Mr. Barna more time to obtain the testimony of an expert.

## VI. THE RULE 54.02 MOTION

More than three months after entry of the order granting summary judgment to the defendant, Mr. Barna filed a Tenn. R. Civ. P. 60.02(5) motion for relief from a final judgment. The court treated the motion as a Tenn. R. Civ. P. 54.02 motion for relief from a judgment that is less than final and denied Mr. Barna's motion, declaring it to be without

-14-

merit whether considered under Rule 54.02 or Rule 60.02.

The trial court correctly concluded that the dismissal of Mr. Barna's complaint was not a final order since that order had not disposed of Mr. Sieler's countercomplaint. An order or judgment which is not final is "subject to revision at any time." Tenn. R. Civ. P. 54.02. "Rule 54.02 applies to cases, such as this one, in which judgment was not entered as to all of the defendants or claims." *Harris v. Chern*, 33 S.W.2d 741, 743 (Tenn. 2000). The Tennessee Rules of Civil Procedure "allow for . . . motions 'to revise' a non-final partial judgment, see Tenn. R. Civ. P. 54.02." *Id.*

> Our research reveals no Tennessee case law regarding the standard a trial court should apply in ruling on a Rule 54.02 motion to revise. Cases analyzing Rule 59.04 motions to alter or amend, however, offer some guidance in determining the standard for revising non-final orders. *See Thomas v. Swindle*, 676 So.2d 333, 335 (Ala. Civ. App.1996) (finding "caselaw concerning Rule 59 motions to be persuasive authority" in interpreting Rule 54 motions). While the rules are not synonymous, they are similar in intent and operation. They differ in that Rule 59.04 addresses final judgments and requires a motion to alter or amend to be made within 30 days of the entry of judgment. In contrast, Rule 54.02 addresses interlocutory orders. Rule 54.02 confers upon the trial court "the privilege of reversing itself up to and including the date of entry of a final judgment." *Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649, 653 (Tenn. Ct. App.1993). Both rules, however, afford litigants a limited opportunity to readdress previously determined issues and afford trial courts an opportunity to revisit and reverse their own decisions.

*Harris v. Chern*, 33 S.W.3d at 744. *See also Stovall v. Clarke*, 113 S.W.2d 715, 721(Tenn. 2003) ("Cases analyzing Rule 59.04 motions to alter or amend ... offer some guidance in determining the standard for revising non-final orders. *Harris v. Chern*, 33 S.W.3d 741, 744 (Tenn.2000)" ); *Kenyon v. Handal*, 122 S.W.3d at 764 ("we have consistently used its [Rule 54.02] standards to review Tenn. R. Civ. P. 59.02 motions.")

In *Harris*, the Tennessee Supreme Court established the standards applicable to a Tenn. R. Civ. P. 54.02 motion to revise a partial summary judgment when additional evidence is presented in support of such a motion to create a dispute of material fact. [8]   In this case, however, Mr. Barna did not submit any new evidence, but contended that the trial court unfairly refused to give him more time to find an expert to oppose the summary judgment motion.

Consequently, we must look to the standards generally governing motions to revise non-final judgments under Rule 54 and motions to alter or amend judgments which have not yet become final for purposes of appeal under Rule 59, where no additional evidence is presented.

We review a trial court's determination regarding whether to grant a Rule 59.04 motion to alter or amend a judgment under an abuse of discretion standard  because such motions are addressed to the trial court's discretion.  *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn.2003); *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn.2003); *Ferguson v. Brown*, 291 S.W.3d 381, 388 (Tenn. Ct. App. 2008) (citing *McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 795 (Tenn. Ct. App.1997)). The trial court is in the best position to decide whether an order of dismissal should be set aside. *Henry v. Goins*, 104 S.W.3d at 482.

"The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005).  Motions to alter or amend a judgment pursuant to Tenn. R. Civ. P. 59 may be granted "(1) when the controlling law changes before a judgment becomes final, (2) when previously unavailable evidence becomes available, or (3) when, for sui generis reasons, a judgment should be amended to correct a clear error of law or to prevent injustice." *Whalum v. Marshall*, 224 S.W.3d 169, 175 (Tenn. Ct. App.2006).

---

[8]When additional evidence is submitted in support of a Rule 54.02 motion to revise a grant of summary judgment, a trial court should consider, when applicable: 1) the movant's efforts to obtain evidence to respond to the motion for summary judgment; 2) the importance of the newly submitted evidence to the movant's case; 3) the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment; 4) the likelihood that the nonmoving party will suffer unfair prejudice; and 5) any other relevant factor. *Harris v. Chern*, 33 S.W.2d at 745

Because Mr. Barna has not alleged that there was a change in the law or that previously unavailable evidence was now available, his request for relief must fall into the third category: that the judgment should be amended to correct a clear error of law or to prevent injustice. Mr. Barna does not argue that the trial court made an error of law in granting summary judgment to Mr. Seiler. Instead, he simply argues that his delay in obtaining an expert's affidavit was reasonable. When a party seeks either Rule 59.04 or Rule 60.02 relief, the burden of proof is on the moving party. *Stovall v. Clarke*, 113 S.W.3d at 721; *Henry v. Goins*, 104 S.W.3d at 482.

Having reviewed the assertions regarding the delay, as well as the record, we conclude that the trial court acted well within its discretion in denying Mr. Barna's motion for relief from judgment.

We also agree with the trial court that Mr. Barna did not demonstrate that he was entitled to relief under Rule 60.02, even if the court were to consider his motion under that rule. Because of the importance of finality in litigation, the standard for relief under Rule 60.02 is more stringent than that under Rule 54.02. Decisions on Rule 60.02 motions are also subject to appellate review under the abuse of discretion standard. *Underwood v. Zurich Ins. Co.,* 854 S.W.2d 94, 97 (Tenn. 1993); *Toney v. Mueller*, 810 S.W2d 145, 147 (Tenn. 1991).

Rule 60.02(5) is applicable only to situations that are not covered by the other clauses in Rule 60.02 or in cases of extreme hardship. *Duncan v. Duncan*, 789 S.W.2d 557, 564 (Tenn. Ct. App. 1990). A motion for relief from a final judgment under 60.02(5) should be granted "only in the most unique, exceptional or extraordinary circumstances." *NCNB National Bank v. Threalkill*, 856 S.W.2d 150, (Tenn. Ct. App. 1993) (citing *Steioff v. Steioff*, 833 S.W.2d 94, 97 (Tenn. Ct. App. 1992)). We do not believe such circumstances have been shown in the present case, and we conclude that the trial court correctly declared that even if Mr. Barna's motion were to be considered under the standards of Rule 60.02(5), it would have to fail.

Mr. Barna filed his motion almost four months after the court rendered summary judgment, he failed to submit an expert affidavit with the motion, and he did not offer any explanation for that failure. A trial court is not required to allow a plaintiff to delay proceedings indefinitely in the hope of eventually finding the evidence needed to prevail. The record shows that over fourteen months elapsed between the filing of Mr. Barna's complaint and the denial of his final motion, and that he failed to produce an expert affidavit during that time. The trial court did not abuse its discretion in denying Mr. Barna's motion.

**VII.**

The judgment of the trial court is affirmed.  We remand this case to the Circuit Court of Davidson County for any further proceedings necessary.  Tax the costs on appeal to the appellant, Joseph C. Barna.

_____

PATRICIA J. COTTRELL, JUDGE